CHAMBERS OF
STEPHANIE A. GALLAGHER
UNITED STATES MAGISTRATE JUDGE

101 WEST LOMBARD STREET
BALTIMORE, MARYLAND 21201
(410) 962-7780
Fax (410) 962-1812

June 13, 2013

LETTER TO COUNSEL:

    RE:    *William H. Gordy, Jr. v. Commissioner, Social Security Administration*;
            Civil No. SAG-11-2998

Dear Counsel:

    On October 20, 2011, the Plaintiff, William H. Gordy, Jr., petitioned this Court to review the Social Security Administration's final decision to deny his claims for Supplemental Security Income ("SSI") and Disability Insurance Benefits ("DIB"). (ECF No. 1). I have considered the parties' cross-motions for summary judgment and Mr. Gordy's reply. (ECF Nos. 23, 24, 25). I find that no hearing is necessary. Local Rule 105.6 (D. Md. 2011). This Court must uphold the decision of the agency if it is supported by substantial evidence and if the agency employed proper legal standards. 42 U.S.C. §§ 405(g), 1383(c)(3); *see Craig v. Chater*, 76 F.3d 585, 589 (4th Cir. 1996) (superseded by statute on other grounds). Under that standard, I will grant the Commissioner's motion and deny Plaintiff's motion. This letter explains my rationale.

    Mr. Gordy filed his claims for benefits on October 13, 2006, alleging disability beginning on January 1, 2005. (Tr. 119-30).[1] His claims were denied initially on March 16, 2007, and on reconsideration on May 22, 2007. (Tr. 95-99, 101-04). A hearing was held on August 15, 2008 before an Administrative Law Judge ("ALJ"). (Tr. 42-88). Following the hearing, on May 5, 2009, the ALJ determined that Mr. Gordy was not disabled during the relevant time frame. (Tr. 21-41). The Appeals Council denied Mr. Gordy's request for review (Tr. 3-7), so the ALJ's decision constitutes the final, reviewable decision of the agency.

    The ALJ found that Mr. Gordy suffered from the severe impairments of depression, bipolar disorder, attention deficit hyperactivity disorder, intermittent explosive disorder, left foot drop, left arm weakness and numbness, degenerative disc disease, osteoarthritis of the right knee, cervical radiculopathy, and status post right shoulder rotator cuff tear repair. (Tr. 27). Despite these impairments, the ALJ determined that Mr. Gordy retained the residual functional capacity ("RFC") to:

---

[1] Mr. Gordy previously applied for SSI and DIB on July 29, 2002. Those claims were dismissed after Mr. Gordy did not show cause for failing to appear at an ALJ hearing. (Tr. 24).

> [P]erform simple, routine, low stress, low concentration, low memory light work as defined in 20 CFR 404.1567(b) and 416.967(b) except that he could lift 20 pounds occasionally, 10 pounds frequently, stand or walk for 20 to 30 minutes, sit for 20 to 30 minutes consistently on an alternative basis, 8 hours a day, 5 days a week, mildly limited to push and pull in the right upper extremity, mildly limited to push, pull and grip in the left upper extremity, avoiding exposure to ladder[s], ropes and scaffolds with jobs that do not require much reading and writing.

(Tr. 33). After considering the testimony of a vocational expert ("VE"), the ALJ determined that Mr. Gordy could perform jobs that exist in significant numbers in the national economy, and that he was therefore not disabled during the relevant time frame. (Tr. 40-41).

Mr. Gordy presents six arguments on appeal: (1) that the ALJ inadequately analyzed Listing 1.04; (2) the ALJ failed to assign weight to Dr. Brooks's medical opinion; (3) the ALJ erred in his assignment of weight to Dr. Oidick's opinion; (4) that ALJ improperly discounted the opinion of his treating physician; (5) the ALJ erred at step five; and (6) that the ALJ's credibility determination was not supported by substantial evidence. Each argument lacks merit.

First, Mr. Gordy contends that the ALJ failed to properly identify and fully analyze Listing 1.04 at step three in the sequential evaluation process. Pl. Mot. 11-16. "For a claimant to show that his impairment matches a listing, it must meet *all* of the specified medical criteria." *Sullivan v. Zebley*, 493 U.S. 521, 530 (1990) (emphasis in original). The claimant bears the burden of demonstrating that his impairment meets or equals a listed impairment. *Kellough v. Heckler*, 785 F.2d 1147, 1152 (4th Cir. 1986). Despite the general nature of the ALJ's language describing his evaluation of Listing 1.04, I find that the ALJ provided substantial evidence to support his finding. The ALJ first stated that he had considered the listings under Section 1.00 and other relevant listings, and did not find that the precise criteria of any listing had been met. (Tr. 32). He next noted that no physician had mentioned any finding that would be equivalent in severity to any listed impairment. *Id.* Separately, under the severity and RFC analyses, the ALJ thoroughly examined the medical evidence pertaining to Mr. Gordy's lower extremity pain and numbness and degenerative disc disease. (Tr. 27-29, 34-36). Mr. Gordy does not argue that he meets Listing 1.04, but instead asserts that the medical evidence should have triggered the ALJ to specifically compare each listed criteria to his symptoms and, further, to evaluate his symptoms under the equivalence standard under 20 CFR § 404.1526. His argument fails. Where conflicting evidence allows reasonable minds to differ as to whether a claimant is disabled, the responsibility for that decision falls to the ALJ. *Mastro v. Apfel*, 270 F.3d 171, 179 (4th Cir. 2001) (quoting *Walker v. Bowen*, 834 F.2d 635, 640 (7th Cir.1987)). Listing 1.04 requires evidence of nerve root compression characterized by certain signs of pain, motor loss, and limitation of motion; spinal arachnoiditis, accompanied by severe burning or dysesthesia; or lumbar spinal stenosis resulting in pseudoclaudication. 20 C.F.R. Pt. 404, Subpt. P, App. 1, § 1.04. Here, the ALJ detailed the mild to moderate findings shown in MRIs, and noted that treating physician Dr. Greco recommended against spinal surgery because Mr. Gordy did not have significant nerve or cord compression. (Tr. 28). The record evidence fails to establish that

Mr. Gordy's impairments rise to the level of severity required by Listing 1.04, and no physician suggested that his impairments supported a finding of medical equivalence. I find the ALJ's analysis was based on substantial evidence.

Second, Mr. Gordy argues the ALJ made remandable error in failing to assign weight to consultative examiner Dr. Glenwood Brooks's opinion. The ALJ thoroughly summarized Dr. Brooks's findings during the step two severity analysis. (Tr. 31). Dr. Brooks found Mr. Gordy was capable of learning with accommodations, and that he presented with bipolar symptoms, but that he was not being treated for the disorder. *Id.* The ALJ also relied upon Dr. Brooks's report in concluding that Dr. Michael Oidick's opinion warranted "great weight" because it was "consistent with the medical record as a whole and with Dr. Brooks'[s] evaluation specifically[,]" implying that he gave credence to Dr. Brooks's findings. (Tr. 39). Ultimately, the ALJ's RFC determination reflected many of the limitations found by Dr. Brooks. Dr. Brooks found Mr. Gordy had the cognitive and memory skills required for work, functioned independently, and was a "likable personality." (Tr. 254). However, Mr. Gordy was limited by being "fairly reactive" and "self focused to the degree that he misses opportunity for learning and productive change." *Id.* The ALJ limited the cognitive and social aspects of Mr. Gordy's RFC by specifying he could only perform work that was "simple, routine, low stress, low concentration, [and] low memory[.]" (Tr. 33). Given the ALJ's summarization of Dr. Brooks's report and his later reliance upon it, remand is unwarranted solely on the basis of a failure to explicitly state the weight given to the opinion.

Mr. Gordy next takes issue with the ALJ's assignment of great weight to state psychology consultant Dr. Oidick's opinion. Dr. Oidick found that Mr. Gordy had mild limitations in his activities of daily living; moderate restrictions in social functioning and maintaining concentration, persistence, and pace; and no episodes of decompensation. (Tr. 278). Mr. Gordy alleges that these findings are inconsistent with the "restrictive limitations" contained in Dr. Brooks's report. Pl. Mot. 18-19. Mr. Gordy places great significance on Dr. Brooks's report that Mr. Gordy "provided minimal indication of sensible judgment about personal and social situations." (Tr. 252). However, the interaction underlying that finding was that Mr. Gordy answered that he did not know why people paid taxes when asked, whereas most people attempt to respond to the question. *Id.* Regarding Mr. Gordy's "poor training potential[,]" Dr. Brooks based that finding on Mr. Gordy's need "to believe he was right . . . and to impress" and perfectionism. (Tr. 253-54). Thus, Dr. Brooks's observations and findings do not undermine the moderate limitations Dr. Oidick endorsed. His argument is without merit.

Fourth, Mr. Gordy contends that the ALJ did not support his rejection of treating physician Dr. Mahesha Thimmarayappa's opinion. A treating physician's opinion is not entitled to controlling weight if it is inconsistent with the other substantial evidence of record. 20 C.F.R. §§ 404.1527(c)(2), 416.927(c)(2); *see also* 20 C.F.R. § 404.1527(c)(3) (stating that "[t]he more a medical source presents relevant evidence to support an opinion, particularly medical signs and laboratory findings, the more weight we will give that opinion."). Dr. Thimmarayappa submitted two opinions, in February 2007 and April 2008, that Mr. Gordy was completely disabled, even

from sedentary work. (Tr. 338-41, 353-56). Dr. Thimmarayappa indicated that Mr. Gordy suffered from extreme limitations, such as an inability to sit for more than an hour, a complete inability to stand or walk, and the capacity to lift no more than ten pounds. (Tr. 339, 354). Dr. Thimmarayappa did not submit objective medical evidence to support such a finding, and the Commissioner was unable to obtain contemporaneous treatment notes or test results from him. (Tr. 193-94). However, the medical record contains much to refute a finding of total disability. Drs. Zamani, Albright, and Hakkarinen all found Mr. Gordy had the physical capacity to work. (Tr. 264-66) (finding that although Mr. Gordy complained that "basically every joint in the body is aching and hurting" that no objective clinical findings supported those complaints), (Tr. 286-93) (noting Mr. Gordy's ability to walk in a normal gait and to walk on his tiptoes and heels), (Tr. 294). I find that the ALJ's assignment of little weight to Dr. Thimmarayappa's opinion supported by substantial evidence.

Fifth, Mr. Gordy argues that the ALJ neglected to include all limitations in the hypotheticals posed to the VE, and, further, failed to consider relevant testimony from the VE given during cross examination. The ALJ is afforded "great latitude in posing hypothetical questions," *Koonce v. Apfel*, No. 98–1144, 1999 WL 7864, at *5 (4th Cir. Jan. 11, 1999), and need only pose those that are based on substantial evidence and accurately reflect a claimant's limitations. *See Copeland v. Bowen*, 861 F.2d 536, 540–41 (9th Cir. 1988). For the reasons discussed above, the ALJ properly included only those restrictions from Dr. Brooks's report supported by substantial evidence in the RFC and hypothetical. During cross examination, Mr. Gordy asked the VE to extrapolate the loss in productivity that a person displaying some of the behaviors or limitations observed by Dr. Brooks might incur. In doing so, Mr. Gordy misconstrued the findings in Dr. Brooks's report, which ultimately did not find that Mr. Gordy was precluded from work, but that he had some limitations. His argument fails.

Finally, Mr. Gordy asserts that the ALJ's credibility finding was deficient. The Fourth Circuit has developed a two-part test for evaluating a claimant's subjective complaints, such as the limiting effects of an impairment. *Chater,* 76 F.3d at 594. First, there must be objective medical evidence of a medical impairment reasonably likely to cause the symptoms alleged by the claimant. *Id.* After the claimant meets this threshold obligation, the ALJ must evaluate "the intensity and persistence of the claimant's [symptoms], and the extent to which it affects [his] ability to work." *Id.* at 595. The ALJ followed that process in this case. The ALJ comprehensively articulated the medical evidence that undermined Mr. Gordy's complaints of debilitating pain, which included medical imaging results demonstrating only mild to moderate indications of disc degeneration and normal clinical examinations. (Tr. 34-36). In particular, the ALJ addressed Mr. Gordy's contentions with respect to each of his physical impairments and compared the objective evidence suggesting that Mr. Gordy's complaints were not credible. *Id.* Remand is therefore unwarranted.

For the reasons set forth herein, Plaintiff's motion for summary judgment (ECF No. 23) will be DENIED and the Commissioner's motion for summary judgment (ECF No. 24) will be GRANTED. The Clerk is directed to CLOSE this case.

Despite the informal nature of this letter, it should be flagged as an opinion. An implementing Order follows.

Sincerely yours,

/s/
Stephanie A. Gallagher
United States Magistrate Judge